# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JAMES GORMAN, | ) |
| | ) |
|             Plaintiff, | ) |
| v. | ) |
| | ) Case No. 08-0685-CV-W-FJG |
| | ) |
| MISSOURI GAS ENERGY and | ) |
| DEBORAH HAYS, | ) |
| | ) |
|             Defendants. | ) |

## ORDER

Currently pending before the Court is Defendants' Motion for Summary Judgment (Doc. #37); Defendants' Motion in Limine on 1990's Issues (Doc. # 65); Defendants' Motion in Limine on Medical Issues (Doc. # 67); Defendants' Motion in Limine on Remaining Evidentiary Issues (Doc. # 69); Defendants' Motion to File Document Under Seal (Doc. # 72) and Defendants' Motion to Re-Schedule Trial Date (Doc. # 77).

### I. BACKGROUND

On June 3, 1968, plaintiff, James Gorman began working for a predecessor of Missouri Gas Energy ("MGE"). On January 31, 1994, plaintiff began working for MGE when it bought out the predecessor corporation. Plaintiff's supervisor was Steve Holcomb, the Vice-President of Field Operations for MGE. In 2006, Mr. Holcomb had recommended Mr. Gorman for a promotion to the Compliance Director position. This promotion was approved by Robert Hack, MGE's Chief Operating Officer. At the time of his promotion, Mr. Gorman was 58 years old. MGE promoted Mr. Gorman four times after the age of fifty and six times after the age of forty. Mr. Gorman was terminated on

December 27, 2007, following an investigation by the company into his role in falsifying company records. At the time of his termination, Mr. Gorman was 59 years old and held the position of Compliance Director.

Plaintiff alleges in his petition that defendants discriminated against him on the basis of his age and that his age was a contributing factor in his termination. Plaintiff asserts four claims in his petition: 1) Discriminatory Discharge in Violation of Missouri Human Rights Act against MGE; 2) Wrongful Termination/Discriminatory Discharge Against Deborah Hays; 3) Age Discrimination and 4) Intentional Infliction of Emotional Distress.

On November 16, 2007, plaintiff asked one of his subordinates, Theresa Hartigan, a Senior Engineering Specialist, to obtain a fictitious, back-dated invoice from a local caterer, Shawn Swindle of "Catering By Shawn." Plaintiff asked Ms. Hartigan to have the invoice indicate that the catering had been provided in connection with a corporate sponsored training session, an odorant spill exercise, that had occurred in early November. On November 27, 2007, Ms. Hartigan emailed Mr. Swindle and asked for "a bill for the 'Chevron Odorant Spill Exercise' on November 6 and 7. Make the total bill $1300.00. Bill it out as food for 2 days for 50 people." Ms. Hartigan obtained the invoice and forwarded it to plaintiff. Later, plaintiff requested that Ms. Hartigan obtain a faxed copy of the invoice. After receiving the invoice, plaintiff wrote on the bill that it was "Reception for gas company representatives attending the spill exercise." Plaintiff admitted in his deposition that this notation was incorrect and that the catering for that event had not even been supplied by MGE. Rather, plaintiff wanted to use the funds to pay for a Christmas party for his staff. Ms. Hartigan also knew that the invoice was

2

unrelated to the spill exercise, but was to be used to pay for the off-site Christmas party for employees and spouses in plaintiff's department.

On December 4, 2007, plaintiff asked another employee, Linda Lane, an Administrative Assistant, to create a transmittal form for the Catering invoice. Plaintiff told Ms. Lane that the invoice was to be used to obtain funds for a Christmas party, but he wanted her to code the bill as a reception cost for the odorant spill exercise. Plaintiff told Ms. Lane that he did not want the "John Lassmans of the world to see it [the invoice]." John Lassman was MGE's Director of General Accounting. Ms. Lane drafted the transmittal form and gave it to plaintiff. However, she later had second thoughts and told plaintiff that she was not comfortable submitting the transmittal form with her name on it. Plaintiff took the invoice and told Ms. Lane that he would get it paid another way. Plaintiff then called Ms. Hartigan and asked if he could put her name on the invoice. Ms. Hartigan agreed and plaintiff then substituted Ms. Hartigan's name for Ms. Lane's name and submitted the form to accounting.

Steve Holcomb, plaintiff's supervisor, learned from MGE's Vice-President of Finance-Controller, that plaintiff had submitted a potentially inappropriate invoice and transmittal form. Mr. Holcomb brought the documents to Deborah Hays, MGE's Vice-President of Human Resources. Ms. Hays, informed Mr. Hack, MGE's Chief Operating Officer and Todd Jacobs, Senior Attorney. After discussing the situation, Mr. Jacobs directed Ms. Hays to conduct an investigation. Ms. Hays conducted interviews with plaintiff, Ms. Lane, Ms. Hartigan, Ms. Callawy and Brian Dresel, Compliance Training Manager. During the investigation, Ms. Hays learned that plaintiff had on one other occasion directed an employee to falsify a document. In July 2007, a group of

3

employees had lunch to celebrate Ms. Callaway's birthday. Linda Lane paid for her own lunch. Plaintiff intended to pay for Ms. Lane's lunch, but missed the opportunity. Plaintiff then asked Crystal Callaway to add additional mileage to her expense report and give the $10 to Linda Lane. When Ms. Callaway submitted her next mileage expense report, she added enough mileage to obtain an extra $10, which she then gave to Linda Lane. Ms. Callaway added the extra mileage because plaintiff had asked her to do so.

During the investigation, plaintiff admitted that "he had attempted to do something that was less than honest;" he admitted to falsifying Company documents and stated "he now understands that he is subject to discharge." (Defendant's Exhibit 31). During his deposition, plaintiff acknowledged that he had submitted a false document, but he thought the punishment he received was too harsh. Following the investigation, Ms. Hays conferred with Mr. Jacobs and determined that termination was warranted based on the seriousness of the offenses. Mr. Holcomb agreed with the termination recommendation. Ms. Hays and Mr. Jacobs recommended to Mr. Hack that plaintiff be terminated. Mr. Hack made the decision that plaintiff's employment should be terminated on December 27, 2007. On January 9, 2008, plaintiff filed for unemployment compensation with the Missouri Division of Employment Security. In his application, he wrote that he was terminated for "Falsification of a company document." He also checked the box "yes" in response to the question, "Do you agree you did what the employer said you were being fired for?" (Defendant's Exhibit 14). Plaintiff admitted during his deposition that he could not identify any similarly situated younger employees who were not terminated for the same or similar conduct. (Gorman Depo. p.

88: 9-25).

In his petition, plaintiff alleged certain age based comments were made by a former Vice-President of Operations for Missouri Gas Energy, Carlon Nelson and the former Vice-President of Human Resources for Southern Union Company, Nancy Capezzutti in the mid- 1990's.  Plaintiff states in his petition that Nancy Capezzutti stated that Missouri Gas Energy discussed their preference for a younger work force.  Plaintiff explained in his deposition that he heard Ms. Capezzutti make this comment during an informal conversation and that she stated it was her opinion that five years should be the average length of an employee's tenure with the Company.  Plaintiff also alleges that similar comments were made by Ron Endres, former CFO of Southern Union Company and Peter Kelly, former CEO of Southern Union Company.  However, during his deposition, plaintiff admitted that he was not at the meeting during which Mr. Kelly or Mr. Endres made these statements.  Plaintiff stated under oath in 1998 that "nothing [was] ever mentioned to me by management that the company was out to get senior people." (Defendant's Exhibit 20, pp. 29-30).  Additionally, plaintiff admits that the "incidents involving Capezzuti, Endres and Kelly would have been toward the 96-98 time frame" and "the Carlon Nelson incident would have been around that same time frame."  (Gorman Depo. p. 119:11-120:6; p. 361: 6-9).  Ms. Capezzuti, Mr. Kelly and Mr. Endres all left Southern Union in 2001.  Ms. Nelson left Missouri Gas Energy in 1998.

Following the completion of the investigation, Ms. Lane received a written Corrective Action and Ms. Callaway and Ms. Hartigan each received a written Corrective Action and an unpaid suspension of two days.  Following Mr. Gorman's termination, his responsibilities were split up amongst four employees, all of whom were

5

over the age of forty: Todd Jacobs (age 41); Steve Holcomb (age 56); Richard Bosley (age 62) and David Glass (age 54).

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

## III. DISCUSSION

## A. Missouri Human Rights Act (Count I); Discriminatory Discharge (Count II); and Wrongful Termination (Count III)

"In deciding a case under the MHRA, appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 818 (Mo. banc 2007). "Missouri's discrimination safeguards under the MHRA, however, are not identical to the federal standards and can offer greater discrimination protection." Id. at 818-19. In Daugherty, the Missouri Supreme Court stated:

> [t]he MHRA defines "discrimination" to include "**any** unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." Section 213.010(5)(emphasis added). Nothing in this statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics contributed to the unfair treatment, that is sufficient.

Id. at 819. The Court in Daugherty determined that:

> the "contributing factor" language used in MAI 31.24 is consistent with the plain meaning of the MHRA. Analyzing summary judgment decisions under the standards set forth in MAI 31.24 is appropriate because a plaintiff has no higher standard to survive summary judgment than is required to submit a claim to a jury. Applying the MAI 31.24 "contributing factor" standard in determining summary judgment under the MHRA results in the following analysis: Daugherty's claims for age and disability discrimination can survive summary judgment if there is a genuine issue of material fact as to whether age or disability was a "contributing factor" in the City's termination decision.

Id. at 820.

The Court stated that in the context of an MHRA employment discrimination case, it must determine, "whether the record shows two plausible, but contradictory, accounts of the essential facts and the "genuine issue" in the case is real, not merely

7

argumentative, imaginary, or frivolous." Id. at 820.

Defendants argue that plaintiff's age was not a contributing factor in his termination, because he admittedly failed to perform to the company's legitimate expectations, he was terminated for a legitimate, non-discriminatory reason and there is no evidence of any age based animus or other facts which show that age was a contributing factor.

Plaintiff does not dispute that he falsified the document or that he asked another employee to submit a false document. In fact, the exhibits are replete with instances in which he admits that what he did was wrong. "My ultimate actions were wrong. . . . It was asked of me if I had suggested to Crystal Callaway that she turn in mileage and reimburse Linda Lane $10 for lunch. I did admit to doing that . . . Yes, I did something that was wrong. I deserve to be punished for this infraction." (December 14, 2007 letter to Mr. Holcomb, Ms. Hays and Mr. Jacobs - Defendants' Exh. 34). Plaintiff stated in an email to Linda Lane, "MGE employees that I have visited with I have insisted that no one is to blame for my being gone but me." (January 8, 2008 email to Linda Lane from Mr. Gorman - Defendants' Exh. 36). In his January 9, 2008 application for unemployment compensation, Mr. Gorman wrote that he was terminated for falsifying company documents and checked the box confirming that he did what MGE fired him for. He then added in his own handwriting, "I did falsify a company document - only one in 39 ½ years of service. I was fired for trying to reward my staff and spouses with a holiday party. I knew that my superior would not approve. And I took the step of trying to hide the reason for getting a check to pay for the party . . . I agree what I did was wrong. I deserved to be punished. But after 39 ½ years of dedicated service with no

8

disciplinary action in over 25 years I think the punishment of being fired exceeded the crime." He also checked the box confirming that he knew that he could be terminated for his actions. (Defendants' Exh. 14).

Plaintiff argues in response that MGE cannot cite to any specific rule that he violated and MGE did not have a policy which stated that any employee who falsified records must be fired and could not be rehired. Plaintiff also argues that the fact that no one previously had been fired for this offense, coupled with the fact that younger employees who were involved were not fired leads to an inference that his age was a contributing factor in the decision to fire him.

However, as defendants note, MGE's Ethics Policy states that "[i]t is the company's policy that all transactions will be accurately reflected in its books and records. Plaintiff acknowledged during his deposition that he had read and received training on MGE's ethics policy and understood that demonstrating ethical behavior was part of his job function. Additionally regardless of whether MGE did or did not have a policy stating that employees who falsified records must be fired, Mr. Gorman admitted in his deposition that he knew that MGE had a progressive disciplinary procedure, and that some steps could be skipped and an employee could be terminated. (Gorman Depo. Pp. 32:7-33:2). MGE's Disciplinary policy states in part:

> Employees will be subject to discipline for substantial (or lack of) performance, excessive tardiness, absence without excuse, violation of safety regulations, violation of Company rules or regulations or any other action detrimental to the interest of the Company, customers or other employees . . . Each employee is considered to be an 'employee at will.' Either party may terminate the relationship at any time, or for any reason . . . Acceptable disciplinary measures include, but are not limited to: . . . (g) discharge. These measures may be taken in any order, separately, or in any combination, depending on the nature of the infraction.

9

(Defendants' Exh. 44)

Thus, MGE was within its rights in deciding that plaintiff's actions were sufficiently serious to warrant termination. As the Court in Hanebrink v. Brown Shoe Co., 110 F.3d 644, 646 (8th Cir. 1997), stated, "employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully."

Plaintiff also argues that his age was a contributing factor in the decision to terminate him because younger employees who were involved were not fired. However, the three other individuals were not similarly situated to plaintiff. The Eighth Circuit has stated that a "plaintiff must show that the employee who was treated differently was similarly situated to him in all relevant respects." Johnson v. University of Iowa, 431 F.3d 325, 330 (8th Cir. 2005)(internal citations & quotations omitted). Plaintiff was the Director of Compliance, who reported directly to Mr. Holcomb, the Vice-President of Field Operations. Plaintiff's position was a director level position in which he had a number of people who reported directly to him. Ms. Callaway was an Environmental Compliance Specialist who reported to plaintiff. Additionally, Theresa Hartigan and Linda Lane were also not similarly situated to plaintiff. Ms. Hartigan was a Senior Engineering Specialist and reported to plaintiff. Ms. Lane was an Administrative Assistant for Field Operations, who worked for a number of people including the plaintiff. Additionally, MGE determined through its investigation, that it was plaintiff's idea to submit a false invoice and it was at his suggestion that Ms. Callaway submit the extra mileage to pay for Ms. Lane's lunch. Although the others played a part, the Company determined that their actions were not as serious as plaintiff's and they acted pursuant to plaintiff's direction and requests. Because his actions were more serious in nature

10

and additionally, because he held a more responsible position within the Company, it was within MGE's discretion to discipline him differently. Thus, the different types of discipline that Ms. Lane, Ms. Hartigan and Ms. Callaway received does not show that age was a contributing factor in Mr. Gorman's termination.

Plaintiff also argues that MGE had a history of discriminatory animus towards older workers. Plaintiff states that even when discriminatory acts are not actionable under the MHRA because they occurred prior to the filing of a charge of discrimination, the discriminatory acts are relevant and admissible to establish discriminatory animus. Plaintiff argues that age based discriminatory comments made by the former executives during the 1990's should be considered as background evidence because it shows that MGE has a history of discrimination and it is more likely that MGE discriminated against him in this case. However, the comments to which plaintiff refers were made over ten years ago, by individuals who are no longer with the company and who played no part in the decision to terminate him. In Johnson v. Deloitte & Touche, LLP, No. 0604399 (DSD/FLN), 2008 WL 2331578, *4 (D.Minn. June 3, 2008), the Court found that stray age related statements made twelve years earlier were too remote in time to be indicative of age discrimination. Additionally, Robert Hack, MGE's Chief Operating Officer, stated in his affidavit, that he did not attend any of the meetings where the comments were allegedly made and he has no first hand knowledge of what was, or was not, said by such individuals. Additionally, as defendants note in their reply suggestions, "[w]hether evidence is admissible for a fact finder to consider at trial as so-called 'background evidence' . . . is separate and distinct from whether evidence is sufficient to defeat summary judgment." (Defendant's Reply Suggestions, p. 24). In

11

Hervey v. City of Little Rock, 787 F.2d 1223 (8th Cir. 1986), the Court stated, "[e]vidence of prior discrimination by a defendant is relevant only as background information and cannot by itself establish classwide discrimination. United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S.Ct. 1885,1889, 52 L.Ed.2d 571 (1977). Competent evidence showing that a defendant has discriminated during the proper relevant time frame is *always* required, no matter what that defendant has done in the past." Id. at 1229 n.5 (emphasis added). In the instant case, the Court finds that comments are too far removed in time to be considered as evidence of MGE's discriminatory animus and that plaintiff has failed to come forward with any evidence suggesting that age was a contributing factor to his termination.

Plaintiff also alleges that MGE's discriminatory animus toward older workers continues and is manifested by favoring younger workers for promotions and age related comments in the workplace. Plaintiff states that Teresa Hartigan was passed over for a promotion and the position was given to a younger, less qualified employee. He also states that Ms. Hartigan overheard Steve Holcomb state that John Groh needed to retire. Plaintiff states that Mr. Groh was later transferred to a less desirable position for the same pay. Plaintiff asserts that Mr. Groh described his transfer as "putting the old bull out to pasture."

Defendants argue that plaintiff has no first hand knowledge of these incidents and was not involved in these personnel decisions and as such, his allegations are based on speculation and conjecture. Additionally, defendants note that plaintiff acknowledged during his deposition that Mr. Groh's transfer occurred after plaintiff's termination and he had no first hand knowledge of the transfer. (Plaintiff's Depo. p.

12

199:22-200:9; 201:20-202:8).  Additionally, Ms. Hartigan testified that she had never heard discriminatory remarks related to Mr. Groh's transfer.  (Hartigan Depo. p. 54:5-18).  Similarly, with regard to the allegation that younger, less experienced employees were promoted over older employees, defendants argue that plaintiff has no first hand knowledge of the personnel decisions that were involved.  Additionally, after Ms. Hartigan complained that a younger employee was chosen over her, MGE conducted an investigation and determined that no discrimination had occurred.  Accordingly, the Court does not find that these two incidents show that MGE had a discriminatory animus toward older workers.

Additionally, it should be noted that in 2006, Mr. Hack approved plaintiff's promotion to the position of Compliance Director.  Mr. Hack was also in the same protected class as plaintiff, as he is 48 years old.  After plaintiff was terminated, his job responsibilities were split up amongst four employees, all who are over the age of forty.  These factors all tend to show that age was not a contributing factor to plaintiff's termination, but rather, it was plaintiff's misconduct which caused the termination.

Accordingly, for the reasons stated above, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment on Counts I, II and III.

### B.  Intentional Infliction of Emotional Distress (Count IV)

To state a claim for Intentional Infliction of Emotional Distress, "a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm."  Bailey v. Bayer CropScience L.P., 563 F.3d 302, 310 (8th Cir. 2009)(quoting Gibson v. Brewer, 952

S.W.2d 239, 249 (Mo. 1997)(en banc). "The conduct must have been 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo. 1969)).

Plaintiff in opposition states that his claims for emotional distress should not be dismissed because he is alleging only "garden variety" emotional distress damages which do not require any expert medical proof. Plaintiff argues that he was fired for falsifying records when no one else had previously been fired for this conduct, he was fired on his grandson's birthday and was dismissed without an opportunity to say good-bye to his co-workers. He alleges that all of these factors contributed to significant stress which led to his suffering a stroke in early 2008. Defendants state that plaintiff has failed to demonstrate any evidence to support his claim for intentional infliction of emotional distress. The Court agrees and finds that plaintiff has failed to offer any evidence showing that MGE's actions were outrageous in character or so extreme in degree as to go beyond all possible bounds of decency. In fact, the evidence showed that Deborah Hays drove plaintiff home after he was terminated and he was not prevented from calling or emailing his former co-workers. Accordingly, the Court hereby **GRANTS** defendants' Motion for Summary Judgment on Count IV.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** defendants' Motion for Summary Judgment (Doc. # 37); **GRANTS** Defendants' Motion to File Document Under Seal (Doc. # 72) and **DENIES AS MOOT**, Defendants' Motion in Limine on 1990's

14

Issues (Doc. # 65); Defendants' Motion in Limine on Medical Issues (Doc. # 67); Defendants' Motion in Limine on Remaining Evidentiary Issues (Doc. # 69); and Defendants' Motion to Re-Schedule Trial Date (Doc. # 77).


Date: 11/06/09                       **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri            Fernando J. Gaitan, Jr.
                                               Chief United States District Judge